**FILED**

**AUG 2 2 2006**

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FELIX J. ESQUIBEL      )
7250 Windhaven Court     )
Portage, MI 49024       )

      Plaintiff,

  v.

MARIA CINO             )
Department of Transportation )
400 7th Street, S.W.      )
Washington, D.C. 20590   )
                   )
      Defendant.    )
_____)

CASE NUMBER  1:06CV01485 JURY

JUDGE: Paul L. Friedman ACTION

DECK TYPE: Employment Discrimination

DATE STAMP: 08/23/2006

**JURY TRIAL REQUESTED**

## COMPLAINT OF DISCRIMINATION

1.   Plaintiff Felix J. Esquibel, by and through undersigned counsel, hereby files this civil action against Defendant Maria Cino, as head of the Department of Transportation, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e <u>et seq.</u> Plaintiff seeks relief pursuant to Title VII and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, for harms caused to Mr. Esquibel when Defendant denied him a promotion to Quality Management System & Standards Specialist based on his race and national origin (Hispanic).

2.   Plaintiff requests as relief in this Complaint: retroactive promotion to the position he was unlawfully denied

with full back pay and benefits; maximum compensatory damages; and the reasonable fees and expenses of bringing this action.

## PARTIES

3.    Plaintiff  Felix  J.  Esquibel  ("Mr.  Esquibel"  or "Plaintiff"), a Hispanic male, born in 1961, is employed as an Operations  Supervisor,  MSS-2  GJ-7,  Air  Traffic  Controller  at the Kalamazoo Air Traffic Control Tower located in Kalamazoo, Michigan.

4.    Acting  Secretary  Maria  Cino  is  being  sued  in  her official capacity only, as acting head of the Department of Transportation.  Her address is Department of Transportation, 400 7th Street, S.W., Washington, D.C. 20590.

## JURISDICTION AND VENUE

5.    This  Court  has  jurisdiction  over  this  Complaint because  it  presents  a  question  of  federal  law.  28  U.S.C.  § 1331.

6.    Specifically,  this  Court  has  jurisdiction  over  this Complaint pursuant to 42 U.S.C. § 2000e-5(f)(3), 42 U.S.C. §2000e-16(d), and 42 U.S.C. §1981a.

7.    This Court is the proper venue pursuant to 42 U.S.C. § 2000e-5(f)(3). The  discriminatory  acts  complained of  took place in Washington, D.C.

2

8.   Mr. Esquibel initiated a timely informal EEO administrative complaint against the Department of Transportation ("DOT"), Federal Aviation Administration ("FAA"), on December 7, 2004. The DOT/FAA ("Agency") was unwilling to resolve Mr. Esquibel's claims of disparate treatment or articulate objective evidence to refute them. The Agency refused Alternate Dispute Resolution ("ADR").   Mr. Esquibel subsequently filed a formal EEO complaint, Agency Case No. DOT-2005-18943-FAA-02, on January 9, 2005. Since this date, the Agency has been unwilling to resolve this matter, the Agency has stonewalled Mr. Esquibel's repeated information requests, and has not issued a Final Agency Decision.

9.   The Agency subsumed this complaint within a pending class action on May 17, 2005 before the EEOC. The Agency took this complaint out of abeyance on April 12, 2006 following the denial of certification to the relevant class.   Absent the abeyance period, the Agency has had over 250 days to investigate this claim. Mr. Esquibel has been unable to ascertain if a due diligence investigation has even taken place.

10.   Mr. Esquibel now files this District Court Complaint more than 180 days since the filing of his EEO complaint. Mr.

3

Esquibel has therefore properly exhausted his administrative remedies. <u>See</u> 29 C.F.R. § 1614.105-06, 407.

## FACTS

### Plaintiff's Background

11. Mr. Esquibel is a highly experienced Operations Supervisor, who graduated <u>cum</u> <u>laude</u> from Embry-Riddle Aeronautical University with a Bachelor of Science, Professional Aeronautics, in 1987. He holds a Master of Business Administration ("MBA"), Organizational Development degree from Aurora University in 1996. The appropriate authority to issue degrees accredits both institutions. Mr. Esquibel is an adjunct faculty member teaching for Davenport University during his spare time.

12. Mr. Esquibel has remained current in his field of expertise by completing numerous job-related training courses such as Statistical Process Control ("SPC"), MTH 345 at Davenport University in 1999, Calculus, MTH 410 at Davenport University in 2004, Theory of Constraints, Goldratt Institute in 2004. As well he has completed the IRCA Certified Auditor/Lead Auditor of Quality Systems Course in 2001. Mr. Esquibel holds certifications as a Quality Control Technician (#15259) from the American Society of Quality since 1999 and

4

as a Quality Manager (#05192) since 2000.

13. Mr. Esquibel has achieved many job-related performance awards, including letters of commendation and exemplary appraisals of performance from the Federal Aviation Administration.

14. Mr. Esquibel has 27 years of aviation related experience; this includes 18 years with the DOT/FAA. He has over 8 years of active-duty experience with the U.S. Air Force and 10 years of experience with the U.S. Air Force Reserve ("USAFR"). He facilitated Leadership Development Programs for the 4th Air Force, which included quality initiatives as outlined by renowned quality experts Crosby, Deming, and Juran. Mr. Esquibel is retired from the USAFR as allowed by the Base Realignment and Closure Committee rules. Mr. Esquibel has extensive graduate-level business knowledge particularly in the areas of management, quality control, ISO 9000, the Malcolm Baldrige National Quality Award, and all phases of project management. Mr. Esquibel is a member of the Project Management Institute ("PMI"), as well as a Senior Member of the American Society of Quality. His 27 years of aviation experience ranges from aircraft mechanic on C-5A's to military and civilian air traffic control.

15.  Mr. Esquibel started working at the DOT/FAA as a GS-11 Air Traffic Controller in 1988, after serving in the United States Air Force since 1979. He was responsible for the safe, efficient and smooth flow of air traffic at Chicago-Dupage Air Traffic Control Tower, a Level II, Visual Flight Rules ("VFR") airport serving the Chicago Metropolitan area. He reported to the Area Supervisor, and while serving in this capacity, he was competitively promoted to a temporarily supervisory position and was formally recognized with a Letter of Commendation by the Air Traffic Manager.  Mr. Esquibel was subsequently promoted to serve as an Air Traffic Control Specialist at Chicago-Midway Air Traffic Control Tower. Mr. Esquibel served the DOT/FAA as an EEO counselor for the Chicago Metropolitan Area, a collateral duty in which he received extensive training in EEO law.  He was instrumental in resolving numerous informal complaints.

16.  Mr. Esquibel was promoted to his present position of Operations Supervisor from the position of Air Traffic Controller, GS-12 in 1995.   In his current position Mr. Esquibel is responsible for the daily operation of Instrument Flight Rules ("IFR") and VFR air traffic activities within Kalamazoo's delegated airspace.  Traffic density for 2004 and

2005 was 145,374 and 133,445 respectively.  He has performed all of these duties in a manner consistent with his professional obligations as an FAA Operations Supervisor and public servant. Mr. Esquibel has Fully Successful ratings for the three years prior to the non-selection, and has received Organizational Success Increases and Superior Contribution Increases to his salary.

17. Mr. Esquibel's public service includes the delivery of meals via the Meals-on-Wheels Program to the local area of Portage, Michigan.  As well, he is a member of the Supervisory Committee to the Kal-Postal Federal Credit Union (currently Access First FCU) a sub-committee to the Board of Directors.

### Non-Selection

18. Mr. Esquibel was subjected to a non-selection on the basis of his race and national origin (Hispanic) for the position advertised in FAA Vacancy Announcement Number AWA-AIR-04-AT40010-72564, Quality Management System & Standards Specialist. The vacancy was located in Washington, D.C.

19. The selection was made by the Manager of AIR-230.

20. Mr. Esquibel submitted his application for the position on March 17, 2004. Included with his application was

7

his full resume and four additional pages of information addressing the vacancy-specific knowledge, skills, abilities, and experience that Mr. Esquibel had relevant to the announced vacancy.

21. Mr. Esquibel was never contacted for an interview for this position.

22. On December 2, 2004, Mr. Esquibel was informed by telephone in response to his inquiries that he had not been selected at some point in June 2004 for the Quality Management Systems & Standards Specialist position despite his being highly qualified for said position. On December 16, 2004, Mr. Esquibel made a formal request for the Agency to "debrief" — a common feedback mechanism - Mr. Esquibel as to what he could do to improve his resume for future vacancies. As of this date (July 26, 2006) the Agency has not articulated their reason(s) for non-selection or what the selectee possessed that Mr. Esquibel lacked.

23. Mr. Esquibel filed his formal EEO Complaint on January 9, 2005. Mr. Esquibel had an excellent record, a quarter century of relevant experience and outstanding performance appraisals. Although he applied for the position

8

in a timely manner, the DOT/FAA has stonewalled every request for resolution to his claim of disparate treatment.

24. The selectee for the vacancy was Mr. Michael J. Lightbrown (non-Hispanic) The selectee's credentials are significantly less than those of Mr. Esquibel. Mr. Esquibel's resume was obviously superior to those of the selectee.

25. Technical expertise in and implementation of ISO 9000 quality standards is a core responsibility of the vacancy. Mr. Esquibel has taught a number of courses at Davenport University focusing heavily on precisely these quality standards. He holds an MBA, as well as being certified as a Quality Control Technician and Quality Manager. According to Technical Committee 176, the United States representative to the International Organization of Standards, ISO 9000 is a "business" standard, not a "technical" standard. ISO 9000 does not specify how to make a better airplane — it specifies those actions management must take to ensure all the technical specifications are incorporated into the business processes to ensure quality is delivered to the customer. Mr. Esquibel has the technical background and obviously the business background, since he is already certified as a Quality Manager. By contrast, the selectee only has an Associate's

9

degree in Aeronautical Science. Mr. Lightbrown is not certified as a Quality Technician or Quality Manager by the very society that oversees the ISO 9000 Program in the United States, while as Mr. Esquibel is.

26. Training and providing guidance to DOT/FAA personnel service-wide regarding quality management issues are core responsibilities of the position at issue. Mr. Esquibel has had long experience in teaching undergraduate students in this exact field. The selectee has not taught any students in this or any other related subject at the university level.

27. Mr. Esquibel has worked as a consultant for local private industry as a facilitator for Economic Development Job Training Grants whose sole intent was to achieve ISO 9000 certification. This included areas such as problem-solving and process improvement. This experience is directly related to the advertised position's requirement that a successful candidate must have "comprehensive knowledge of problem-solving techniques for evaluating or improving processes and programs." The selectee's application cited no relevant qualification.

28. Actively promoting cooperation, teamwork, attaining objectives, making decisions, and exercising initiative on

10

highly visible programs are all core responsibilities of the vacancy. Mr. Esquibel has demonstrated his ability to perform all of these duties over his 25 years as a public servant in the Air Force and DOT/FAA.

29. Mr. Esquibel has been employed by the FAA continuously since 1988, giving him 18 years of service as an employee of the Agency, while the selectee has only been employed by the FAA since 1991.

30. Based on the large disparity between the qualifications of Mr. Esquibel and the selectee, it is hard to fathom why Mr. Esquibel was not selected. Mr. Esquibel repeatedly requested the reasons to support this selection, yet no rationale was ever provided to him.

31. Mr. Esquibel's non-selection is the result of a systematic and chronic under-representation of Hispanics at higher levels of the DOT/FAA. This under-representation of Hispanics is not a result of a lack of highly-qualified Hispanic candidates with requisite job experience and education.

32. According to FAA statistics, while Hispanic employees constitute 18% of FAA employees in GS-1 to GS-4 positions, they do not constitute more than 7.5% of FAA

11

employees in any higher pay grade, dropping to a mere 4.5% of FAA SES employees.

33. No other minority group displays a distribution of relative percentages of employees within FAA at each level that is so dramatically skewed towards the lowest pay categories. This under representation was addressed in Executive Order 13171 noting "that Hispanics are under represented in the Federal civilian workforce."

34. These trends are a reflection of a government-wide Hispanic representation crisis. In FY 2005 Hispanics comprised 13.5% of the civilian labor force while comprising only 7.4% of the federal workforce. Hispanics are the only minority group under-represented in the federal workforce; overall representation of minorities in the federal workforce is actually higher than the proportion of minorities in the civilian labor force by 4.4%.

35. The gap between the proportion of Hispanics in the federal workforce and the civilian labor force has grown by 30% since 2000.

36. The proportional rate of hiring of Hispanics by the federal government is decreasing. In 2002, Hispanics were 9.5%

of federal new hires; in FY 2005, they were only 8.3% of federal new hires.

37. The retention rates for Hispanics in federal service are appallingly low. The number of separations of Hispanic employees since 2001 has been roughly 45% as much as the number of new Hispanic hires during the same period.

38. Hispanics are grossly under-represented in senior executive positions. Hispanic representation at the Senior Pay Level has increased at a rate of only one tenth of one percent a year since 2000, from 3% to 3.5%. Hispanic career SES representation has actually decreased, from 2.5% in 2000 to 2.3 percent in FY 2005.

39. The problem will only get worse. Given the GAO's projections for the retirement rate of senior executives, by 2007, the current rate of hiring of Hispanics will be insufficient to keep up with the rate of retirement. If current trends continue, the number of Hispanics in career SES positions will decline to less than 140 government-wide.

40. The Agency's lackadaisical implementation of Special Emphasis Programs, Executive Orders, laws and regulations guarantees that the proportion of Hispanic employees in Agency will continue to remain skewed.

13

## Harm; Damages

41. The harm Mr. Esquibel has suffered as a result of the Defendant's non-selection has been extensive; this agony has been protracted by the Agency's complete lack of communication and unwillingness to address Mr. Esquibel's claim of disparate treatment.   Mr. Esquibel was unlawfully denied promotion to the headquarters' position which was crucial to his advancement within the agency.   The Agency failed to inform him of his non-selection for six months following the non-selection.

42. Plaintiff only received a written notice of non-selection in a letter postmarked February 17, 2005, which informed him that he was "qualified for the position and placed on the selection list but was not selected."   The unconscionable delay in informing Mr. Esquibel as to the status of his application caused considerable stress and anguish for him.

43. Furthermore, none of the Detail Opportunities available in the Washington D.C. local commuting area are available to Plaintiff in his current position, severely retarding his ability to broaden or develop his promotion potential to the GS-15 or Senior Executive Service levels.

14

## CAUSES OF ACTION

### Count I

44. Based upon the facts described in the preceding paragraphs, Defendant unlawfully discriminated against Plaintiff Felix J. Esquibel because of his race and national origin (Hispanic) by not selecting him for the Quality Management System & Standards Specialist, FV-301 position, in violation of the Civil Rights Act of 1964, as amended, U.S.C. § 2000e, et seq.

### RELIEF REQUESTED

45. Plaintiff requests any and all relief available under Title VII of the Civil Rights Act of 1964, as amended, U.S.C. § 2000e, et seq., and 42 U.S.C. § 1981a, and civil rights law, including but not limited to the following:

A. Retroactive promotion to the position of Quality Management System & Standards Specialist, FV-301.

B. Full back pay and benefits commensurate with this position, with all applicable within-grade increases and interest from the date of non-selection, approximately June 1, 2004.

C. Compensatory damages up to the maximum amount of $300,000 in an amount appropriate to the proof at trial.

D.    The reasonable attorneys' fees, at prevailing market rates, and costs and expenses of bringing this case.

### JURY TRIAL

46.  Plaintiff requests a trial by jury on all issues that are triable by jury.


CHARLES W. DAY
(DC Bar No. 459820)
MYRREL C. HENDRICKS
(Admitted in D.C.)
GEBHARDT & ASSOCIATES, LLP, 1101
17th Street, N.W., Suite 807
Washington, DC 20036-4716
(202) 496-0400

August 22, 2006                    Attorneys for Plaintiff

16