UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FELIX J. ESQUIBEL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civil Action No. 06-1485 (PLF) |
| V. | ) |
| | ) ECF |
| **MARIA CINO,** | ) |
| **Secretary, Dept. of Transportation** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**I.   INTRODUCTION**

Plaintiff has failed to satisfy his burden of establishing that (1) he was more qualified for the position than the selectee, or (2) the agency's proffered reason is phony and thereby a pretext for discrimination. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000) (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). Because plaintiff has failed to discredit the Agency's stated reasons with competent rebuttal evidence, summary judgment should be granted on all claims. See Waterhouse v. District of Columbia, 298 F.3d 989, 992 (D.C. Cir. 2002).

**II.   ARGUMENT**

**Defendant's Legitimate Non-Discriminatory Reason for Not Interviewing The Plaintiff for the Quality Management System & Standards Specialist Position Is Not A Pretext for Race Or National Origin Discrimination**

There is no competent evidence that the interview panel failed to chose Plaintiff for an interview because he is Hispanic, which is Plaintiff's ultimate burden.  Plaintiff's personal speculation and belief of his own superior qualifications, no matter how sincerely held, is not a sufficient basis for successfully opposing a motion for summary judgment.  See McGill v. Munoz, 203 F.3d 843, 846 (D.C. Cir.2000) (speculation insufficient to avoid summary judgment); Brown, 199 F.3d at 459 (D.C. Cir. 1997) (same); Griffin v. Acacia Life Insurance Co., 151 F. Supp.2d 78, 81 (D.D.C. 2001).

The qualification gap between the candidates are not great enough to be inherently indicative of discrimination.  "[The Courts] must assume that a reasonable juror who might disagree with the employer's decision, but would find the question close, would not usually infer discrimination on the basis of a comparison of qualifications alone."  Aka v. Wash. Hosp. Ctr., 156 F.3d 1284, 1294 (D.C. Cir. 1998).  However, if a "reasonable employer [co]uld have found the plaintiff to be **significantly better qualified** for the job, but . . .did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate – something that employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture."  Id.  See also Jackson v. Gonzales, 496 F.3d 703, 707 (D.C. Cir. 2007)(internal citations omitted); Holcomb v. Powell, 433 F.3d 889, 897 (D.C. Cir. 2006); Stewart v. Ashcroft, 352 F.3d 422, 429-30 (D.C. Cir 2003).  "In order to justify an inference of discrimination, the qualifications gap must be great enough to be inherently indicative of discrimination."  Jackson, citing Holcomb, 433 F.3d at 897.  "To conclude otherwise would be to render the judiciary a "super-personnel department that reexamines an entity's business decisions" – a role [the courts] have repeatedly disclaimed."  Id.

In Jackson, supra the D.C. Circuit found that the plaintiff, who was denied a research analyst position, failed to establish that he was "significantly better qualified" than the selectee. The Jackson Court refused to "reexamine governmental promotion decisions where it appears the government [i]s faced with a difficult decision between two qualified candidates, particularly when there is no other evidence that race played a part in the decision." 496 F.3d 703, 708. Moreover, the Court went on to state:

> As we have explained before, . . . job descriptions are often phrased in general terms, and *employers then make the ultimate hiring decision in light of more specific factors-such as their strategic priorities and goals at the time, the strengths and weaknesses of the applicant pool, and the overall skills of and gaps in their existing workforce, among many other factors*. We have said that courts must not second-guess an employer's initial choice of appropriate qualification; rather *the courts "defer to the [employer's] decision of what nondiscriminatory qualities it will seek" in filling a position.* Stewart, 352 F.3d at 429; see also Browning v. Dep't of the Army, 436 F.3d 692, 698 (6th Cir. 2006) ("Questioning [the employer's] hiring criteria is not within the province of this court. . . ."). Particularly given the dynamic nature of the hiring process, moreover, we have also stated that we will not second-guess how an employer weighs particular factors in the hiring decision. See Barnette v. Chertoff, 453 F.3d 513, 517 (D.C. Cir. 2006) ("[C]ourts must defer to the employer's decision as to which qualities required by the job. . . it weighs more heavily.") . . . [Emphasis added]

496 F.3d 703, 708-709.

Reasonable employers do not ordinarily limit their evaluation of applicants to a "mechanistic checkoff of qualifications". They may appropriately take additional credentials into account, if those credentials would prove useful in performing the job. Id., at 709. See Nichols v. Lewis Grocer, 138 F.3d 563, 568 (5th Cir. 1998) (hiring decisions are "dynamic," and "relative importance placed on various selection criteria cannot be expected to remain fixed and

unyielding" throughout the process). The fact that an employer based its ultimate hiring decision on one or more specific factors encompassed within a broader and more general job description does not itself raise an inference of discrimination sufficient to overcome summary judgment. Jackson, 496 F.3d at 709.

In Barnette, supra., the D.C. Circuit found that the Plaintiff, who was denied an assistant Director for Operations position, failed to establish that he was significantly better qualified than the selectee. Instead, the court stated that both candidates "had the requisite substantive and supervisory experience, and both brought unique strengths to the position." Id., at 518. The court went further and stated that "faced with such nuanced differences in candidate credentials" the employer, not the jury, should make that "judgment call." Id.

Likewise, in the instant case, the judgment call as to the relative qualifications of the candidates is for the employer to make. The evidence is such that Plaintiff's qualifications do not act as a mark of distinction. Accordingly, he has failed to meet his burden of adducing evidence of pretext for racial discrimination. This Court is not charged with reexamining the Agency's selection decisions where the basis is qualifications, particularly when there is no other evidence that race played a part in the decision. See Stewart, 352 F.3d at 430. Like the Plaintiff in Stewart, Jackson and Barnette, Mr. Esquibel "was simply not discernibly better" than the candidate selected. Id., at 429. Summary judgment should therefore be entered in favor of Defendant on Plaintiff's claims of discrimination.

In addition, the fact that the Agency hired a contractor, after the fact, to aid in the implementation of the ISO 9000 Quality Management system is not evidence of pretext. Ms. Juanita Young along with two other panel members, reviewed each of the applications of the

4

individuals that the Office of Human Resources Management (HR) had determined to be the "Best Qualified" for the position. The panel came to a consensus on who should be interviewed for the position. Declaration of Juanita Young, ¶ 2, Reply Exhibit (Exh) A. Mr. Esquibel was not chosen for an interview for the position because the agency was looking for someone with hands-on experience in the Quality Management System and someone who had detailed auditing experience. It was determined from Mr. Lightbrown's application that he had previous experience setting up management systems as well as detailed experience as an auditor. Exh. A, ¶ 3. Although Mr. Esquibel listed his educational attainments as well as his certifications, upon review of his entire application package, the panel determined that he did not have the necessary hands-on experience in setting up a quality management system or the detailed experience in auditing that the Agency was looking for. From the applications that were reviewed, it was evident that other applicants had more of this type of experience. Those applicants were offered an interview. Id. Significantly, at the time of reviewing the applications to determine who would receive an interview, Ms. Juanita Young did not know that the Plaintiff was of Hispanic origin. Id.

    A) The Process

Typically, HR reviews the applications for a particular position and determines whether the applicants have met the minimum qualification requirements. Declaration of Norma C. Bonewitz, Exh. B, ¶ 4. HR reviews the Knowledge, Skills and Abilities (KSAs) of those applicants that are determined to be minimally qualified. The KSAs are reviewed to determine the "best qualified" candidates for referral to management. Id. Here, the applications of the applicants who were determined to be "best qualified" were forwarded to management.

Management then picked those applicants they wished to interview from the list. "Once we received the packages, we went through and read the packages, looking for people who had the hands-on experience in staffing the Quality Management System and/or in detailed auditing skills. And we read through the packages; and once we read through the packages, we identified those that we thought had the skills we were looking for and we identified four of those. Not saying some other people didn't have some additional skills, but those [were] the four we said we wanted to interview based on the contents of their package." Juanita Young deposition, p. 17. Specifically, hands-on auditing experience was a very important factor to management in the selection for interviews as well as having established a quality management system. Id.

      An employment interview is a discretionary process and management may choose who they wish to interview from the list. Exh. B, ¶ 4, 5. Regardless of the initial decision of HR in analyzing the KSAs and determining the best qualified for the competitive selection list, selecting officials may properly decide that hands-on experience is an important criteria or factor for an interview. Id., at 5. The fact that an employer based its ultimate hiring decision on one or more specific factors encompassed within a broader and more general job description does not itself raise an inference of discrimination sufficient to overcome summary judgment. Jackson, 496 F.3d at 709.

      Management did not consider Mr. Esquibel's work as a consultant significant because he did not establish that he had the experience necessary to establish a quality management system whereas, by contrast, the people that were identified for an interview had that type of experience. Jaunita Young deposition, pp. 17 - 20; 63. Neither were they focused on education. Id., at 33. "We [were] really . . . looking for somebody who had the experience establishing a system. If

6

somebody who didn't have the education had the experience establishing a system that would work as well." Id.

    B) The Outside Contractor

While it is true that subsequent to the selection of Mr. Lightbrown, the Agency hired an outside contractor to aid in the setting-up of the ISO 9000 Quality Management System, at the time of deciding who would be interviewed, Ms. Young had no knowledge that a contractor would be hired. Exh. A, ¶ 4. Subsequent to the hiring of Mr. Lightbrown he was transferred out of her Branch and reported directly to Mr. Frank Paskiewicz, her supervisor at the time. Ms. Young did not make the decision to hire the contractor nor did she have any input in such a decision. Id. Mr. Paskiewicz did not participate in the review of the applications to determine who would be interviewed. Neither did he participate in the interview process. Id. Without more, such evidence is not indicative of pretext. See also Young deposition, pp. 72-73.

    C) The Debriefing

Plaintiff claims that the failure of Ms. Young to de-brief him after he found out that he had not been selected cast doubt on the credibility of the explanation and therefore is evidence of pretext. A de-briefing is discretionary with the selecting official. Ms. Young testified that her practice was to debrief people who she had interviewed for a particular position. She has never given a de-briefing to someone who was not interviewed. Young deposition, p. 82-83. Plaintiff has failed to maintain his burden on this issue.

    Finally, the timing of the explanation is not an indication of pretext. The Agency is not required to publish a contemporaneous statement of reasons every time they make a hiring or firing decision. That is a requirement that Title VII has nevver been understood to impose. See

Jackson, 496 F.3d at 709-710.

### III.   CONCLUSION

For all of the foregoing reasons, Defendant's motion for summary judgment should be granted and Plaintiff's cross motion for summary judgment denied.

Respectfully submitted,

/s/
_____
JEFFREY A. TAYLOR
United States Attorney

/s/
_____
RUDOLPH CONTRERAS
Assistant United States Attorney

/s/
_____
HEATHER GRAHAM-OLIVER
Assistant United States Attorney
555 Fourth Street, N.W.
Civil Division
Washington, D.C.  20530
(202) 305-1334

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FELIX J. ESQUIBEL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) Civil Action No.  06-1485 (PLF) |
| V. | ) |
| | ) ECF |
| **MARIA CINO,** | ) |
| **Secretary, Dept. of Transportation** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S STATEMENT
OF MATERIAL FACTS NOT IN DISPUTE**

1. Not material to a decision on the Plaintiff's Cross-Motion for Summary Judgment.  Mr. Esquibel is an Operations Supervisor for Air Traffic Control.  Esquibel deposition, pp. 16 - 18.

2. Admitted, although not material to a decision on the Plaintiff's Cross-Motion for Summary Judgment.

3. Admitted.

4. Admitted, although all of Mr. Esquibel's experience with the FAA is within Air Traffic Control.  This fact is not material to a decision on Plaintiff's Cross-Motion for Summary Judgment.

5. Admitted, although this fact is not material to a decision on Plaintiff's Cross-Motion for Summary Judgment.

6. Admit the first sentence.  Unable to determine the truth or falsity of the second sentence.  In any event, neither statement is material to this court's decision.

7. Admitted, although not material to this court's decision.

8. Deny for want of information.  Any investigations were conducted in the context of air traffic control and not air craft certification.  Esquibel deposition, pp. 19 - 21.  There is not a program in the air traffic system that deals with the ISO 9000 or the quality management system as a formal program.  Esquibel deposition, p. 28.

9. Admitted, although not material to this court's decision.

10. Deny for want of information.

11. Deny for want of information.

12. Deny for want of knowledge.

13. Deny for want of knowledge.

14. Deny for want of knowledge.

15. Deny for want of knowledge.

16. Deny for want of knowledge.

17. Admit the first sentence and deny the second sentence. This course called Management and Control of Quality has no specific application can apply to any business, profit, non-profit or governmental. Esquibel deposition, p. 25- 28.

18. Admitted, although not material to this court's decision.

19. Deny. "[Mr. Esquibel] was involved with ISO 9000 with the John Henry Corporation when he was called in as a subject matter expert to implement their initial initiative of ISO 9000 certification. [He] was qualified to do so via [his] education, not the position [he] held within the FAA." Esquibel deposition, p. 29; lines 6-11.

## **Non-Selection**

20. Admitted.

21. Admit only that Ms. Young for purposes of the form 50 was the selecting official; however there was a panel of three that decided who should be interviewed and who should be offered the position. Young deposition, p. 7-8; 16-17.

22. Admitted.

23. Admitted.

24. Deny the exact date for want of knowledge but admit the other allegations contained in paragraph 24.

25. Deny the exact date for want of knowledge but admit the other allegations contained in

      paragraph 25.

26. Admit only that Ms. Young did not debrief Mr. Esquibel as she had not interviewed him and deny the other allegations as stated. Young deposition, pp. 82-83.

27. Admitted, although not material.

28. Admitted.

29. Admitted.

30. Deny for want of knowledge.

31. Admitted, although not material.

32. Admitted, although not material.

33. Deny for want of information.

34. Deny for want of information.

35. Admitted.

36. Admit only that subsequent to the selection for the position, the Agency hired an independent contractor to help to establish the Quality Systems and perform audits. Young deposition pp. 72-73.

      Respectfully submitted,

      /s/
      _____
      JEFFREY A. TAYLOR
      United States Attorney

      /s/
      _____
      RUDOLPH CONTRERAS
      Assistant United States Attorney

/s/
_____
HEATHER GRAHAM-OLIVER
Assistant United States Attorney
555 Fourth Street, N.W.
Civil Division
Washington, D.C. 20530
(202) 305-1334